UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAONE, INC., *d/b/a Oasis Family Fun Park*,

                                    **Plaintiff,**

                                    v.                                      1:04-CV-938 (FJS/DRH)

**WILLIAM OBERHOLTZER** and
**ON THE MARK ADVENTURE
GOLF, INC.**, *d/b/a Oberholtzer Construction*,

                                    **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**TOBIN & GRIFFERTY, PC**                 **STEPHEN J. GRIFFERTY, ESQ.**
678 Troy-Schenectady Road                **SARA M. BEATY, ESQ.**
Latham, New York 12210
Attorneys for Plaintiff

**OFFICE OF J. MARK MCQUERREY**     **J. MARK MCQUERREY, ESQ.**
5 Main Street
Hoosick Falls, New York 12090
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 6, 2004, Plaintiff filed its Complaint asserting three causes of action for (1) breach of contract, (2) breach of the implied covenants of good faith and fair dealing, and (3) negligence. These claims arise from an alleged contract between the parties concerning renovations to Plaintiff's miniature golf course. Currently before the Court is Plaintiff's motion

for summary judgment.

## II. BACKGROUND

The parties' factual allegations are widely divergent. Therefore, the Court summarizes each version of the relevant facts in turn.

### A.    Plaintiff's allegations

Plaintiff alleges that the parties entered into a written contract on April 29, 2004, whereby Defendants agreed to provide all labor and materials necessary to remodel Plaintiff's miniature golf course. Specifically, Plaintiff states that the contract required Defendants to construct a bumper boat pond, including walls, docks, light fixtures, a cave, a filter system, a perimeter walkway, and a staging-area deck. Moreover, Plaintiff alleges that the contract required Defendants to renovate the course's clubhouse entrance, the third hole, and the practice green. This project also included constructing a bridge and removing rock traps on the course.

Plaintiff alleges that, pursuant to the contract, Defendants began working in May 2004. However, Plaintiff asserts that Defendants' laborers did not show up for work, causing the project to fall behind schedule. To rectify the situation, Plaintiff claims that he hired temporary workers. Even with these outside laborers, the project did not progress because Defendants failed to provide supervision and direction.

In addition, despite the fact that the contract required Defendants to provide the needed materials, Plaintiff asserts that he was forced to supply all materials to the site. Moreover, Plaintiff alleges that he hired various construction professionals to inspect Defendants' work.

Plaintiff contends that these professionals found that Defendants' work violated building-code requirements and was below the industry standard. On June 12, 2004, Plaintiff notified Defendants that they were in default of the contract as a result of their deficient performance.

**B.     Defendants' allegations**

Defendants claim that they reached an agreement to perform certain work for Plaintiff prior to April 29, 2004. Therefore, Defendants state that they commenced preparatory work in March 2004. Concerning the April 29, 2004 document, Defendants contend that it was merely an estimate prepared at Plaintiff's request. The parties intended the document to enable Plaintiff to obtain disbursement of loan funds from a bank. Therefore, they composed the April 29, 2004 document to conform to an earlier budget from the winter of 2003-2004, which Plaintiff had submitted to the bank to support its initial loan application. Consequently, Defendants contend, the estimate did not reflect intervening changes of which both parties were aware, including a different location for the bumper boat pond, changes in site elevations for the clubhouse and parking lot which required alteration of a ramp and deck, and additional concrete walkways on the course.

Defendants assert that the timing of their construction progress further supports the fact that the April 29, 2004 document was not a contract. Specifically, Defendants allege that they had already made significant progress before April 29, 2004, including the following: filling in traps, reconfiguring the practice green, removing an existing sidewalk near the old practice green, building a deck between the seventh and eighth holes, and removing fixtures and equipment from the old clubhouse. Moreover, Defendants assert that they had also cleared and trimmed trees for

a new picnic area, built retaining walls for a walkout basement, constructed a deck attached to the clubhouse, erected bumper boat pond walls and skimmer baskets, and backfilled the pond.

Concerning the project's schedule, Defendants assert that the April 29, 2004 document does not contain a schedule or other time-related requirements. Furthermore, Defendants state that Plaintiff was aware that Defendants would be opening and operating their own miniature golf course in Georgia at the end of May. Therefore, Defendants claim that Plaintiff knew that they would not be available to work on the project on a regular basis. Moreover, Defendants state that several weeks of delay resulted from the actions of an unrelated contractor who placed heavy equipment in the area of the future bumper boat pond. In addition, Defendants contend that Plaintiff failed to make timely payments to enable Defendants to buy materials and to progress with the project. Finally, Defendants state that Plaintiff approved all building plans and that town building inspectors routinely inspected the progress and noted no building code violations.

### III. DISCUSSION

**A.      Plaintiff's contract-based claims**

Plaintiff's causes of action for breach of contract and breach of the implied covenants of good faith and fair dealing require an enforceable contract with sufficiently definite terms. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995) (noting that implied covenants of good faith and fair dealing arise from a contract) (citations omitted); *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) ("[U]nless a court can determine what the agreement is, it cannot know whether the contract has been breached, and it cannot fashion a

proper remedy . . . ." (citations omitted)).  As summarized above, there is genuine factual dispute concerning whether the April 29, 2004 document constitutes an enforceable contract between the parties.  Plaintiff contends that the document represents the parties' complete agreement, but Defendants assert that the document is an estimate used solely for the purpose of obtaining funding.  Moreover, although Plaintiff asserts that the time for performance commenced in May 2004, Defendants allege that they had already completed substantial portions of the project prior to that time.   Furthermore, reference to the April 29, 2004 document is unavailing because it does not contain any details about the parties' responsibilities or the construction schedule.  The document is labeled "Spring 2004 Construction" and merely sets forth the various projects and the price for each.  *See* Complaint at Exhibit "A."

In light of these disputes, the Court cannot determine whether an enforceable contract exists between the parties without evaluating the parties' conflicting factual accounts.  Moreover, on the basis of the April 29, 2004 document alone, the Court cannot determine the construction schedule or the parties' respective contractual responsibilities.  Therefore, the parties may need to present extrinsic evidence to resolve their dispute.  *See Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir. 1993) (stating that, when a contract's terms are susceptible of multiple meanings, extrinsic evidence should be submitted to the trier of fact) (citation omitted); *Cobble Hill*, 74 N.Y.2d at 483 (citation omitted).  Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment on its claims for breach of contract and breach of the implied covenants of good faith and fair dealing.

**B.    Plaintiff's negligence claim**

Plaintiff also asserts that Defendants negligently performed the contract by failing to exercise reasonable skill and care in performing their required duties.  However, as noted above, at the present time, the Court cannot determine which duties the contract required Defendants to perform.  Moreover, Defendants rebut Plaintiff's claim by asserting that town building department officials inspected their work and did not note any building code violations.  Therefore, there are genuine factual disputes concerning this cause of action as well.  Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment on its negligence claim.[1]

## IV. CONCLUSION

Accordingly, after reviewing the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgment is **DENIED** concerning Plaintiff's claims for breach of contract, breach of the implied covenants of good faith and fair

---

[1] In support of its negligence cause of action, Plaintiff submitted the affidavits of several contractors who opined about the quality of Defendants' work and whether it complied with industry standards and/or applicable building code requirements.  Defendants object to these affidavits on the basis that Plaintiff has not established that these contractors are experts and that the affidavits do not reveal the basis for the contractors' opinions.  In addition, Defendants submitted a similar affidavit in support of the quality of their work, to which Plaintiff objects.

As noted above, genuine issues of material fact exist concerning Plaintiff's negligence cause of action notwithstanding this disputed evidence; therefore, the Court need not resolve this dispute at this time.  However, to the extent that information about the industry standard of care and building code requirements constitutes "technical or other specialized knowledge" within the meaning of Rule 701 of the Federal Rules of Evidence, the Court advises the parties that they will need to establish the competence of these witnesses when this case progresses to trial.

dealing, and negligence; and the Court further

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference with the Court and opposing counsel using a professional conferencing service on September 6, 2007 at 9:00a.m. to set a trial date for this action.

**IT IS SO ORDERED.**

Dated: August 23, 2007
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge